**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10-cr-00963-1 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| STEVEN COLLINS | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Steven Collins is an inmate incarcerated at FCI Elkton, which is experiencing one of the largest outbreaks of COVID-19 in the federal prison system. Because Collins suffers from a medical condition known as sarcoidosis that affects his lungs, he contends that he is at high risk for experiencing a severe illness should he contract COVID-19. For that reason, he brings the present motion for a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 209.) For the reasons that follow, Collins's motion is granted.

**BACKGROUND**

On June 7, 2012, Collins pleaded guilty to one count of conspiracy to possess with intent to distribute and distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. According to Collins's plea agreement, Collins sold heroin for another individual until June 2008. (Plea Agreement ¶ 6, Dkt. No. 97.) Then, around June 2008, Collins established his own drug spot in Chicago, Illinois. Starting out, Collins and the pack workers working on his behalf sold between $200 and $2,200 worth of heroin per day. By early 2009, Collins's operation was selling $10 bags of heroin at his drug spot each day, operating from 7:00 a.m. until 10:00 p.m. Overall, Collins admitted to selling between 10 to 30 kilograms of heroin in connection with the charged conspiracy. (*Id.*)

Following his guilty plea, Collins received a sentence of 168 months' imprisonment on April 9, 2013. (Dkt. No. 123.) That sentence was significantly lower than Collins's range under the United States Sentencing Guidelines ("Guidelines" or "USSG"), which called for a sentence of between 235 and 293 months' imprisonment. The sentencing court[1] determined a below-Guidelines sentence was warranted due to Collins's childhood and family circumstances, drug use, and the rehabilitative steps Collins had taken to improve himself through higher education and employment.

While Collins was serving his term of incarceration, he was diagnosed with sarcoidosis. (Def.'s Mot. to Reduce Sentence, Ex. B at 29–30, 254, Dkt. No. 220.) "Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of [the] body—most commonly the lungs and lymph nodes." *Sarcoidosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last updated Jan. 30, 2019). Collins's sarcoidosis has impacted his lungs, resulting in a persistent cough and bouts of shortness of breath. (Def.'s Mot. to Reduce Sentence, Ex. B at 35–36, 44, 48, 65, 192.) In addition to his sarcoidosis, Collins also has asthma. (*Id.* at 144, 193.)

Currently, Collins is incarcerated at FCI Elkton. FCI Elkton has experienced a severe outbreak of COVID-19 over the past few months. At the time Collins filed his motion on June 2, 2020, there were 468 active cases among inmates and staff at FCI Elkton. Over a month later, the Bureau of Prisons ("BOP") continues to report a substantial number of active cases at FCI Elkton, with a total of 363 positive inmates and staff. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 8, 2020). On April 22, 2020, a district court in Ohio granted a subclass of medically vulnerable FCI Elkton prisoners a preliminary injunction,

---

[1] Normally, the same district judge who imposed a defendant's sentence would also decide that defendant's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). But the judge who sentenced Collins is deceased and so the case has been reassigned for purposes of this motion.

2

ordering the BOP to identify all members of the subclass and evaluate each member's eligibility for transfer out of FCI Elkton through any means. *Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). The Sixth Circuit vacated the injunction on June 9, 2020, holding that the BOP was not deliberately indifferent to the serious risk of harm from COVID-19 in prisons because it "responded reasonably to the known, serious risks posed by COVID-19 to [the prisoners] at Elkton." *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *7 (6th Cir. June 9, 2020). Nonetheless, the Sixth Circuit did find that prisoners at FCI Elkton were able to "put forth sufficient evidence that they are incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks omitted). Specifically, the Sixth Circuit noted that

> [t]he transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, present a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.

*Id.*

In the present motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Collins argues that his sentence should be reduced to time served because he faces serious risks to his health should he contract COVID-19 while incarcerated at FCI Elkton. Collins claims that his sarcoidosis and asthma make him vulnerable to a severe case of COVID-19 should he contract the disease. Indeed, the Centers for Disease Control and Prevention ("CDC") lists individuals of any age with moderate to severe asthma or chronic lung disease (such as sarcoidosis) as potentially being at increased risk for severe illness from COVID-19. *See People Who Need to Take Extra Precautions: People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html (last updated June 25, 2020). Given the serious outbreak of the virus occurring at FCI Elkton, as well as the substantial strides he has made in rehabilitating himself, Collins contends that he is a strong candidate for a sentence reduction.

## DISCUSSION

Once a federal district court imposes a sentence, that sentence may not be modified except in the narrow circumstances set forth in 18 U.S.C. § 3582(c). *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). Relevant here, under 18 U.S.C. § 3582(c)(1)(A)(i):

> [T]he court, upon motion of the director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

This section reflects a recent amendment by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "to allow defendants to petition courts directly for compassionate release the earlier of either fully exhausting" all administrative rights to appeal the BOP's failure to bring a motion for compassionate release on the defendant's behalf or 30 days after the facility warden has received a defendant's request for compassionate release. *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *1 (N.D. Ill. Apr. 3, 2020). Prior to the First Step Act, a defendant could not bring a motion for compassionate release himself but instead had to rely on the BOP to bring such a motion on his behalf. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *1 (S.D.N.Y. Jan. 8, 2020). Because Collins submitted a request for compassionate

4

release to FCI Elkton's warden on April 13, 2020,[2] and filed the present motion more than 30 days after making that request, Collins has exhausted his administrative remedies. The Court may therefore proceed directly to the merits of his request for compassionate release.

### I. Extraordinary and Compelling Reasons

A sentence reduction under § 3582(c)(1)(A)(i) may only be granted when supported by "extraordinary and compelling reasons." The statute does not define what constitutes "extraordinary and compelling reasons," but instead states that the sentence must comply with "applicable policy statements issued by the Sentencing Commission" and "directs the Sentencing Commission to promulgate 'the criteria to be applied and a list of specific' extraordinary and compelling examples." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (quoting 18 U.S.C § 3582(c)(1)(A); 28 U.S.C. § 994(t)). Those criteria are set forth in USSG § 1B1.13 and the Sentencing Commission has limited "extraordinary and compelling reasons" to the four scenarios set forth in the commentary. *Id.* "The specific circumstances broadly cover compassionate release[] based on the defendant's medical condition, age, and family circumstances." *United States v. Cardena*, No. 09-CR-332-11, 2020 WL 2719643, at *3 (N.D. Ill. May 15, 2020). Among other circumstances, compassionate release may be warranted where a defendant suffers from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(ii). Many courts have found that a defendant suffering from a serious physical or medical condition is unable to provide self-care within the prison environment when he is incarcerated in conditions that prevent him from practicing effective social distancing or otherwise inhibit his ability to protect himself

---

[2] The warden denied Collins's request on April 29, 2020.

against exposure to the highly contagious COVID-19 virus. *E.g.*, *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *6 (E.D. Mich. June 9, 2020) (granted release of prisoner incarcerated at FCI Elkton); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020).

An increasing number of courts, however, have found it unnecessary to fit a defendant's circumstances into the Sentencing Commission's specific criteria because the Sentencing Commission has not updated USSG § 1B1.13 since the passage of the First Step Act or "made the policy statement for the old regime applicable to the new one." *United States v. Scott*, No. 17-CR-156, 2020 WL 2508894, at *7–8 (E.D. Wis. May 15, 2020) (internal quotation marks omitted). Consequently, "[n]early all district courts hold that—since the [First Step Act's] passage—section 1B1.13 is not binding but is, rather, helpful guidance." *Cardena*, 2020 WL 2719643, at *3. This Court agrees with that majority. Under § 3582(c)(1)(A), any sentence reduction must be consistent with "***applicable*** policy statements." But USSG § 1B1.13 expressly applies only to a motion made by the BOP. USSG § 1B1.13 n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."). Thus, "the policy statement does not control to the extent it purports to require a motion by the BOP." *Scott*, 2020 WL 2508894, at *8. And "in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in USSG § 1B1.13 cmt. n.1(A)–(C) warrant compassionate release." *Rodriguez*, 424 F. Supp. 3d at 681–82 (internal quotation marks omitted).

Here, the Court concludes that Collins's sarcoidosis in conjunction with the concerning outbreak of COVID-19 in FCI Elkton present extraordinary and compelling circumstances warranting his release. As the Sixth Circuit recognized, prisoners at FCI Elkton are incarcerated in

6

conditions posing a substantial risk of contracting COVID-19. *Wilson*, 2020 WL 3056217, at *7. While the BOP took preventative measures that the Sixth Circuit considered a reasonable response to the risk, that court nonetheless recognized that the "harm imposed by COVID-19 on inmates at Elkton ultimately [was] not averted." *Id.* (internal quotation marks omitted). And Collins's sarcoidosis puts him at risk of suffering a severe illness should he contract COVID-19.[3] *See United States v. Fields*, No. 2:05-CR-20014-02, 2020 WL 3129056, at *3–4 (W.D. La. June 11, 2020); *United States v. Van Cleave*, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *6–7 (W.D. Wash. May 29, 2020); *cf. United State v. Thomas*, No. 17-194 (RDM), 2020 WL 1911558, at *8 (D.D.C. Apr. 20, 2020) (granting pre-trial detainee temporary release because his sarcoidosis put him at risk for severe illness from COVID-19).

Contrary to the Government's contentions, the medical evidence does not show that Collins's sarcoidosis is well-controlled. Indeed, in early February of this year, just prior to the explosion of COVID-19 throughout the United States, Collins reported that his sarcoidosis symptoms were worsening. (Def.'s Mot. to Reduce Sentence, Ex. B at 192.) Recently, Collins sought treatment for a worsening cough caused by his sarcoidosis. While his doctor recommended a steroid to treat the sarcoidosis, the doctor declined to prescribe it because the steroid would lower Collins's immune system and make him more susceptible to COVID-19. (Def.'s Reply in Supp. of Mot. to Reduce Sentence, Ex. A ¶ 12, Dkt. No. 216-1.); *see also Prednisone and other corticosteroids*, Mayo Clinic (Oct. 9, 2019), https://www.mayoclinic.org/steroids/art-20045692

---

[3] While Collins's medical records show that he also suffers from asthma, the records do not indicate the severity of his condition. Given that the CDC specifies that an individual's asthma must be moderate to severe for that person to be at high risk of a severe case of COVID-19, the Court cannot determine whether Collins's asthma places him in a higher risk category. But given that his sarcoidosis alone suffices to demonstrate his heightened risk, the additional diagnosis of asthma would appear only to reinforce, and certainly does not detract from, that conclusion.

7

("Corticosteroids . . . suppress your immune system, which can help control conditions in which your immune system mistakenly attacks its own tissues.").

Moreover, the Court must account for the fact that Collins's sarcoidosis has significantly affected his lungs and COVID-19 is a respiratory illness that frequently attacks the lungs. *See What Coronavirus Does to the Lungs*, Johns Hopkins Med. (Apr. 13, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/what-coronavirus-does-to-the-lungs. Early research suggests that COVID-19 could cause permanent lung damage in some patients, particularly those who suffer severe illness. *E.g.*, Jim Reed & Sophie Hutchinson, *Coronavirus: Warning thousands could be left with lung damage*, BBC (June 23, 2020), https://www.bbc.com/news/health-53065340. Thus, Collins faces a situation where his sarcoidosis puts him at heightened risk of severe illness should he contract COVID-19, which, should he survive, could pose a risk of permanent damage to Collins's lungs thereby exacerbating the long-term effects of his sarcoidosis or otherwise make it more difficult to treat.

While at 38 years old, Collins's age does not present a high-risk factor, that does not alter the analysis given that his sarcoidosis heightens the risk for severe illness regardless of age. Several other courts have granted compassionate release to similarly-aged defendants when they had health conditions that put them at risk for severe COVID-19 illness. *E.g.*, *Fields*, 2020 WL 3129056 (37-year-old defendant with sarcoidosis); *United States v. Smith*, No. 15-cr-30039, 2020 WL 3027197 (C.D. Ill. June 5, 2020) (37-year-old defendant with severe obesity, hypertension, diabetes, and sleep apnea); *Van Cleave*, 2020 WL 2800769 (44-year-old defendant with sarcoidosis). In short, the Court finds that Collins has established extraordinary and compelling reasons for a reduction of his sentence based on the serious COVID-19 outbreak at FCI Elkton and his risk of severe illness should he contract the virus.

## II.  Sentencing Factors under §3553(a)

Next, the Court must determine whether the sentencing factors set forth in 18 U.S.C. § 3553(a) also support compassionate release. Collins was convicted of a serious crime due to the several years he spent dealing substantial quantities of heroin, including a period during which he supervised his own operation. At the same time, even before his arrest, Collins had left the drug trade and made efforts to rehabilitate himself by enrolling in higher education courses. As the Government points out, the sentencing court accounted for those rehabilitation efforts in sentencing Collins below his recommended Guidelines range. However, this Court also accounts for the fact that Collins has continued working toward rehabilitating himself during his incarceration, completing certificates in personal training and nutrition and programs in writing, personal finance, and business essentials. Such efforts demonstrate that Collins is a strong candidate to reenter into society quickly and continue his efforts at building a new, law-abiding life for himself.

Further, the Court believes that Collins presents little danger to the public should he be released. His criminal history does not involve any crimes of violence and the Government has not been able to identify any other history of violence. While incarcerated, Collins's disciplinary record contains only relatively minor and non-violent infractions, such as possession of unauthorized items, including a cell phone, an MP3 player modified to allow recording, and shoes from a different institution. The Government does point to one infraction for escape with subsequent voluntary return within four hours. However, Collins explains that he received this infraction because he was exercising outdoors in the presence of prison officers when the prison announced a recall and emergency count. Such a minor violation should not be held against Collins given his clean record overall.

Finally, the Government contends that Collins has a significant amount of time left on his sentence, as he is not projected to be released until February 20, 2023. Yet Collins has already served almost ten years of his sentence. During the COVID-19 pandemic, courts have found compassionate release warranted even where a significant portion of a defendant's sentence remains to be served. *E.g.*, *Fields*, 2020 WL 3129056 (approximately 38 months remaining on a 180-month term of imprisonment); *Smith*, 2020 WL 3027197 (approximately 46 months remaining before projected release date); *United States v. Brooks*, No. 07-cr-20047-JEB-DGB, 2020 WL 2509107 (C.D. Ill. May 15, 2020) (approximately seven years until projected release date). As discussed above, the Court is confident that Collins is well prepared to reenter society as a productive and law-abiding member. The Court further notes that Collins is the father of three minor children with whom he looks forward to reestablishing a relationship upon his release. In light of these circumstances, the Court cannot discern any § 3553(a) factor that warrants rolling the dice that Collins can avoid contracting a severe or fatal case of COVID-19 at a prison that has had such difficulty controlling COVID-19 simply for the sake of having Collins complete his original sentence. *See Brooks*, 2020 WL 2509107, at *6 ("[K]eeping Defendant imprisoned in an institution unable to quell the plague of COVID-19 within is not consistent with any of the § 3553(a) factors.").

Because Collins suffers from a medical condition that puts him at risk of severe complications should he contract COVID-19 and he is incarcerated in conditions that present a substantial risk of infection, Collins's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is granted. Collins's sentence is reduced to time served with all remaining conditions of his sentence, including the five-year term of supervised release, to remain in place.

## CONCLUSION

For the foregoing reasons, Collins's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 209) is granted. Collins's sentence is reduced to time served and he is ordered to be released from custody at FCI Elkton as soon as practicable. Collins shall begin his term of supervised release immediately upon release.

ENTERED:

Dated: July 10, 2020

_____
Andrea R. Wood
United States District Judge